UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| TENNESSEE RIVERKEEPER, INC., | ) |
| Plaintiff, | ) |
| v. | ) NO. 2:22-cv-00044 |
| CITY OF COOKEVILLE, TENNESSEE, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

The City of Cookeville, Tennessee d/b/a Cookeville Water and Sewer Department ("Cookeville") has filed a Motion to Dismiss for Lack of Subject-Matter Jurisdiction, or, in the alternative, for Failure to State a Claim (Doc. No. 13), seeking dismissal of Tennessee Riverkeeper, Inc.'s ("Riverkeeper") Complaint (Doc. No. 1) alleging violations of the Clean Water Act ("CWA"). For the following reasons, the motion is denied.

I.  BACKGROUND

This is a citizen suit arising from a Consent Decree entered on April 18, 2016, between the State of Tennessee and the Tennessee Department of Environment and Conservation ("TDEC"), as plaintiffs, and Cookeville, as the defendant. The Consent Decree, among other things, required Cookeville to:

1. Complete the implementation of the previously approved Deberry Heights Phase II Correction Action Plan ("CAP") by April 15, 2018.
2. Complete the implementation of the previously approved Little Creek CAP by June 30, 2018.
3. Submit a third Tech CAP to TDEC for review by sixty days after entry of the Consent Decree.
4. Submit a Belle Acres CAP Effectiveness report within 12 months after the entry of the Consent Decree.

5. Develop and submit a CAP for the West End pump station service area with an implementation schedule within 12 months.
6. Develop and submit a CAP for the Briargate pump station service area within 6 months after it experiences two overflows within a calendar year.
7. Submit a sewer overflow response plan ("SORP") within 60 days.
8. Fully implement the SORP within 60 days and submit written notification of the implementation.
9. Develop and submit a Pump Station Operation and Preventive Maintenance Program within 12 months.
10. Develop and maintain capacity, collection, and treatment evaluation protocols on all new sewer connections in areas of chronic overflow within one year.

(Doc. No. 19 at 2-3). Under the Consent Decree, Cookeville was required to submit a Final Report within sixty days of "establishing and successfully achieving compliance with the requirements set forth above." (Doc. No. 14-2 at 12). By no later than June 30, 2018, Cookeville was mandated to complete all requirements of the Consent Decree and achieve compliance with its permit, "except to the extent that an approved CAP for Briargate pump station service area provides for completion of work beyond such date." (Doc. No. 14-2 at 13).

The Consent Decree in relevant part, reads:

> If the Department determines, after review of the Final Report, that the requirements of this Consent Decree that apply to Cookeville have been satisfied, the <u>Department will provide notice to Cookeville</u> and TCWN and this Consent Decree shall be terminated. If the Department determines that any other requirement of this Consent Decree that applies to Cookeville has not been satisfied, <u>the Department will notify Cookeville and TCWN, provide a list of the deficiencies, and may require Cookeville to correct such deficiencies</u>. (emphasis added)

Subsequently, Cookeville submitted its Final Report to TDEC on June 22, 2018, yet TDEC never notified Cookeville that the requirements of the Consent Decree were satisfied or not. (Doc. No. 15 at 5). But oddly on September 13, 2019, TDEC's website marked that the enforcement action was closed. (Doc. No. 19 at 4). Nevertheless, Cookeville reported 95 instances of overflows, estimating about 3,139,780 gallons between the submission of the Final Report and February 24, 2022, from point sources where a CAP was not required. (Doc. No. 19 at 5). For sources where a

CAP was required, Cookeville reported 41 overflows from Deberry Heights (1,542,395 gallons), 43 overflows from Little Creek (2,196,700), 41 overflows from Tech (1,776,315), 2 overflows from Belle Acres (19,000), and 21 overflows from West End pump station (398,475).

On May 25, 2022, Riverkeeper gave its notice to file this suit, and just six weeks later, on July 7, 2022, remarkably, TDEC's website marked the case as "reopened." (Doc. No. 19 at 5).

## II. LEGAL STANDARD AND ANALYSIS

Cookeville's motion argues that the Court lacks subject-matter jurisdiction because the Complaint (Doc. No. 1) seeks the same relief, which is being diligently prosecuted by TDEC, or alternatively, that Riverkeeper fails to state a claim due to the diligent prosecution bar. (Doc. Nos. 15 at 14-15; 23 at 2-3). The Court will discuss each argument in turn.

### A. Lack of Subject-Matter Jurisdiction

Cookeville seeks dismissal of this case by virtue of the diligent prosecution bar, which "precludes a citizen's suit only if the Administrator of the EPA or a State is *diligently* prosecuting an enforcement action in a court of the United States, or a State." Jones v. City of Lakeland, Tennessee, 224 F.3d 518, 522 (6th Cir. 2000); see 33 U.S.C. § 1365(b)(1)(B).[1] Section 1365(b)(1)(B) only requires diligence, not far-reaching or zealous government prosecution. "Nor must an agency's prosecutorial strategy coincide with that of the citizen-plaintiff." Karr v. Hefner, 475 F.3d 1192, 1197 (10th Cir. 2007). In fact, "[a] CWA enforcement action will be considered diligent where it is capable of requiring compliance with the Act and is in good faith calculated to do so." Piney Run Pres. Ass'n v. Cty. Comm'rs of Carroll Cty., Md., 523 F.3d 453, 460 (4th Cir. 2008).

---

[1] Because Cookeville's jurisdictional arguments present a factual attack, "the [C]ourt can actually weigh evidence to confirm the existence of the factual predicates for subject-matter jurisdiction." McCormick v. Miami Univ., 693 F.3d 564, 658 (6th Cir. 2012) (quoting Carrier Corp. v. Outokumpu Oyj, 673 F.3d 430, 440 (6th Cir. 2012)).

Generally, the Court tests whether certain allegations are subject to the diligent prosecution bar as of the time of the filing of a complaint." United States v. Bd. of Cty. Comm'rs of Hamilton Cty., No. 1:02 CV 00107, 2005 WL 2033708, at *11 (S.D. Ohio Aug. 23, 2005) (citing Frilling v. Vill. Of Anna, 924 F. Supp. 821, 836 (S.D. Ohio 1996)). First, the Court must determine whether a prosecution by the state to enforce the same "standard, order, or limitation" was pending on the date that the citizens' suit commenced. Second, "if the answer to the previous question is affirmative, a court must also determine whether the prior pending action was being 'diligently prosecuted' by the state at the time that citizens' suit was filed." Ohio Valley Envtl. Coalition, Inc. v. Maple Coal Co., 808 F. Supp. 2d 868, 883 (S.D. W.Va. 2011). The Court concludes that the answer to the first question is yes and the answer to the second question is no.

Despite the Court's deference to TDEC's prosecution of the Consent Decree, Riverkeeper has made sufficient allegations to proceed with its citizen suit at this stage of litigation.[2] Cookeville was required to achieve compliance with the NPDES Permit "no later than June 30, 2018." (Doc. No. 14-2 ¶ 14). Between submission of the Final Report and September 23, 2022, the filing of the Complaint (Doc. No. 1), 231 overflows were reported in violation of the NPDES Permit. (Doc. No. 1-2 at 1-6). As Riverkeeper alleges, more than half of these overflows occurred at locations Cookeville was explicitly required to correct – yet millions of gallons of untreated wastewater were discharged in the Cumberland River. (Doc. No. 19 at 5). Alone, this is insufficient to rebut the diligence bar – but viewed alongside the entire record, the Court finds that neither TDEC or

---

[2] The Court's determination is limited to the contours of Cookeville's motion to dismiss. See City of Fairborn, Ohio v. United States Env't Prot. Agency, No. 3:22-CV-102, 2023 WL 2478572, at *12 (S.D. Ohio Mar. 13, 2023) ("Whether a prosecution is 'diligent' is an issue more suitable to consider at summary judgment, with the benefit of a more complete record."); see also Friends of the Earth, Inc., 890 F. Supp. at 498 ("The effect of the court's present ruling is merely to allow the Plaintiffs' citizen suit to proceed beyond the threshold limitation of section 505(b)(1)(B). This order does not address the merits of the Plaintiffs' action.").

the State of Tennessee have acted in a manner that is persistent or careful. See Diligence, Merriam-Webster Dictionary (online ed. 2023).

Although the Consent Decree clearly states that TDEC was required to respond to the Final Report, either by terminating the Consent Decree or notifying Cookeville of outstanding deficiencies, it has done neither. (Doc. No. 14 ¶¶ 11, 17). The only sliver of any prosecution from TDEC since Riverkeeper's filing of its Complaint, is a single screenshot from TDEC's website, with the single word: "reopened". (Doc. No. 14-3 at 1). This simply does not suffice. There is no indication of actions taken by TDEC or Tennessee, and the State Action's docket contains no reference to this event altogether. (Compare Doc. No. 19-2 at 1, with Doc. No. 14-3 at 1).

Diligence requires a good faith effort to comply with the Act. See Piney Run Pres. Ass'n, 523 F.3d at 460. Just because the case was reopened only eight weeks after Riverkeeper gave notice of its suit, does not render the prosecution "diligent". And, deference to an agency's action does not mean blind ignorance. See Ailor v. City of Maynardville, TN, 368 F.3d 587, 598 (6th Cir. 2004) ("[The CWA] confers jurisdiction over citizen suits when the citizen-plaintiffs make a good-faith allegation of continuous or intermittent violation."). Accordingly, Cookeville's 12(b)(1) Motion will be denied.

B. Failure to State a Claim

Alternatively, Cookeville seeks dismissal based upon two distinct reasons. First, Cookeville alleges that Riverkeeper failed to make any specific reference to the Consent Decree in its Complaint. (Doc. No. 15 at 14-15). Second, Cookeville contends that the Complaint's statement that "neither the EPA nor the State of Tennessee has commenced and diligently prosecuted a civil or criminal enforcement action in a court of the United States or state for the violations," is a conclusory statement that is not factually supported. The Court disagrees.

5

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "the complaint must include a 'short and plain statement of the claim showing that the pleader is entitled to relief." Ryan v. Blackwell, 979 F.3d 519, 524 (6th Cir. 2020). In determining whether a complaint meets this standard, the Court must accept all of the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief." Doe v. Baum, 903 F.3d 575, 581 (6th Cir. 2018).

Viewing the allegations as true, the Court finds that Riverkeeper has sufficiently plead a claim for relief. Although the Complaint does not, word by word, mention "Consent Decree", it does mention "enforcement" actions. (See Doc. No. 1 ¶¶7-8, 26, 32). Whether "tomato" is pronounced "to-ma-to" or "to-mae-to", the Court reads the allegations giving the words used their normal and usual meaning. As such, the Court is satisfied that the words, "enforcement order", gave sufficient notice to Cookeville. (See Doc. No. 1 ¶32 ("Defendant Cookeville should be subject to an enforcement order…ordering it to fully comply with all requirements of its NPDES Permit and the CWA.")).

Second, Riverkeeper's conclusory statement is factually supported when viewing Riverkeeper's allegations as true. Riverkeeper specifically referred to 306 different NPDES Permit violations since 2017. (Doc. Nos. 1 ¶30; 1-2 at 1-7). The declarations of John Noel and Jon Jonakin further support the Court's denial of Cookeville's Motion. (Doc. Nos. 1-6 ¶¶ 7–8 ("I have long been concerned about pollution of the waters of Tennessee and particularly Center Hill Lake. I have noticed that a primary source of the pollution is sewage from Cookeville. I have noticed that when the water is high I can smell sewage at Burgess Falls."); 1-7 at 1 ("I understand that Cookeville's sanitary sewer system is pressurized by strong rainfall events and this causes the

manholes to be pushed aside and raw sewage overflows into the surrounding area. . . . When sanitary sewer manholes pop their covers and release raw sewage the water in nearby creeks is polluted with fecal matter."). Accordingly, Cookeville's 12(b)(6) motion is denied.

## III. CONCLUSION

For the foregoing reasons, Cookeville's Motion to Dismiss (Doc. No. 13) will be denied. An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE